Case 3:22-cv-00169-DHB-BKE   Document 19   Filed 01/23/23   Page 1 of 10

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| STEVEN LEMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-169 |
| | ) | |
| BRIAN CHAMBERS; ANTOINE CALDWELL; MS. BRAGGS; MISS FRANKLIN; DR. AEYEDN; and MISS CLIETT, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, incarcerated at Johnson State Prison in Wrightsville, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.   **SCREENING THE COMPLAINT**

   A.   **BACKGROUND**

In his complaint, Plaintiff names as Defendants: (1) Antoine Caldwell, (2) Ms. Braggs, (3) Miss Franklin, (4) Dr. Aeyedn, (5) Miss Cliett, and (6) Brian Chambers. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff alleges a campaign of harassment at Johnson State Prison ("JSP") stemming from his "lynch mob trial" where a disbarred defense attorney, Tracey Gibson, was ordered by the Court to represent him, but she did not effectively do so. (Id. at 6.) As a result, Plaintiff was convicted of selling children into sexual servitude, torture, kidnapping, and child molestation. (Id. at 7.) Plaintiff would not have been found guilty at trial if he had an "actual American trial." (Id.) Plaintiff appealed his conviction to the Georgia Supreme Court and has been told "everything would get better" if he dropped the appeal. (Id. at 6.) Plaintiff has a First Amendment right to file an appeal of his state court conviction and alleges prison officials have been involved in adverse actions directly related to Plaintiff's attempt to appeal and file grievances. (Id. at 5-6.)

Also at JSP, Plaintiff has requested protective custody but has been continually denied, so instead he chooses to stay "in the hole." (Id. at 8.) Plaintiff was attacked during one night in 2019 and did not receive protective custody even then. (Id. at 12.) At some unidentified point in 2021, Plaintiff woke up with injuries to his face and thumb. (Id. at 15.) He took photos of his injuries to send to his mother, but the Criminal Investigations Office at JSP told Plaintiff the photos were confiscated over a criminal investigation into what happened to him. (Id.) Plaintiff attempted to file a grievance about this incident, but it was denied. (Id.) After the incident, an X-ray of his hand showed broken bones. (Id. at 17.) He did not see a doctor for seven months after the injuries occurred, which led to his hand healing disfigured. (Id.) Plaintiff wanted to know why he did not get an X-ray for his facial injuries because he wanted a paper trail for a lawsuit. (Id.)

In November 2021, Plaintiff was attacked by an inmate that caused unidentified trauma to his left eye. (Id. at 21.) He was attacked because the prison was badly managed and

understaffed at that time.  (Id.)  A doctor said there was nothing that could be done for the permanent scar.  (Id.)  Plaintiff immediately filed a grievance and did not receive a response. (Id. at 22.)

At an unspecified date, Plaintiff's toilet was not working so Plaintiff was told to go to the general population compound to find a working toilet.  (Id. at 9.)  Instead, Plaintiff used a cup and placed it outside his cell door for a span of a few months.  (Id.)  Somedays, he stopped eating over the smell of the cup.  (Id. at 10.)  Plaintiff refused to move back to the compound because he knew he would be harmed there.  (Id.)  After filing a grievance, the toilet was fixed. (Id.)

In June 2022, Plaintiff was attacked again.  (Id.)  Prior to this attack, he wrote numerous grievances that inmates did not like him because he was a child molester and he needed to be protected.  (Id. at 11.)  Plaintiff's cell door was used to cause injury to his hands and arm.  (Id.) He requested medical treatment but was denied.  (Id.)  Plaintiff states all his medical requests either "disappeared" or were denied.  (Id.)

In May 2022, Plaintiff started using mental health medication and wrote a grievance that medical was using his medication "to do him harm."  (Id. at 18.)  Plaintiff claims he was addicted to his medicine like "an opioid," and nurses would sometimes lie and say the prison was out of his medication or it was missing to cause him to suffer from withdrawals.  (Id.)

In June 2022, Defendant Bragg allowed an inmate who worked for her to go into the hole at J-Dorm.  (Id. at 19.)  This inmate "had issues" with Plaintiff but was still allowed to handle his paperwork.  (Id.)  One day, when Plaintiff asked Defendant Bragg if he could open the door to give her his grievance, the inmate slammed the door on Plaintiff's fingers.  (Id. at

3

20.) The medical unit did not see him. (Id.) Plaintiff believes this inmate somehow caused all his grievances to disappear. (Id.)

In September 2022, Plaintiff and his cellmate were sent to an outdoor holding cell so their cell could be repainted. (Id. at 13.) Plaintiff reminded Defendant Cliett that he could not be exposed to heat for a long time because of his medications. (Id.) Plaintiff was there for hours, received no water, and received a bad sunburn. (Id.) Plaintiff told Defendant Cliett that this was wrong and inhumane, especially since he told her about his sensitivity to sunlight due to his medications. (Id. at 14.) Plaintiff filed a grievance concerning this event. (Id.)

Plaintiff requests Defendants be held liable in their individual and official capacities. (Id. at 25.) Plaintiff requests compensatory and punitive damages. (Id.)

**B.    DISCUSSION**

**1.    Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

4

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

> 2. **Plaintiff Fails to State a Claim Against Defendants Chambers, Caldwell, Franklin, and Aeyedn**

Plaintiff fails to state a claim against Defendants Chambers, Caldwell, Franklin, and Aeyedn. Plaintiff does not mention these Defendants anywhere in his statement of the claims other than listing them as defendants. (See generally doc. no. 1.) Therefore, Plaintiff, does not connect these Defendants with any purported constitutional violation. Dismissal is therefore appropriate. See West v. Atkins, 487 U.S. 42, 48 (1988) (requiring in § 1983 case allegation of violation of right secured by Constitution or laws of United States by person acting under color

5

of state law); Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."). Accordingly, Defendants Chambers, Caldwell, Franklin, and Aeyedn should be dismissed.

> 3. **Plaintiff Fails to State a Valid Deliberate Medical Indifference Claim Against Defendant Cliett**

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege: (1) he had a serious medical need—the objective component, (2) a defendant acted with deliberate indifference to that need—the subjective component, and (3) his injury was caused by a defendant's wrongful conduct. Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (per curiam). To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Melton, 841 F.3d at 1223.

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495,

1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505; see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law" to establish deliberate indifference claim). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Here, Plaintiff alleges he told Defendant Cliett that medications prevented him from being outside for a prolonged period while his cell was being repainted. (Doc. no. 1, p. 13.) Keeping Plaintiff outside for a few hours so that he received a mere sunburn is, at most, negligence and does not rise to the level of deliberate indifference.

### 4. Plaintiff Does Not State a Claim Based on Supervisory Liability against Defendant Bragg

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold defendants liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Here, Plaintiff does not mention Defendant Bragg anywhere in the statement of his claims, except to say that Plaintiff's grievances were continually ignored, denied, or lost after they were sent to her department. (See generally, doc. no. 1.) Plaintiff attempts to argue that the inmate working in the grievance department with Defendant Bragg was responsible for causing the grievances to disappear. (Id.) However, nowhere does Plaintiff allege Defendant Bragg participated in such events. The mere failure to respond to a complaint letter or grievance is insufficient to establish liability. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (*per curiam*) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because record failed to show they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with plaintiff's wishes concerning information in grievance and letter).

Plaintiff must also allege a causal connection between Defendant Bragg and the asserted constitutional violations but fails to do so. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not alleged a history of relevant widespread abuse or a relevant and improper custom or policy as to the grievance procedures. Plaintiff also does not infer Defendant Bragg directed the inmate to act unlawfully or knew he would act unlawfully. Indeed, the Complaint is a rambling litany of minor complaints by Plaintiff concerning his accommodations at the prison, none of which are sufficient to show his conditions fall below Constitutional standards.

In sum, Plaintiff has not shown Defendant Bragg participated in the alleged constitutional violations; nor has he drawn the necessary causal connection to any alleged constitutional

violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted based on Defendant Bragg's supervisory position.

### 5. Plaintiff's Official Capacity Monetary Claims

Plaintiff is suing every Defendant in their individual and official capacities. (Doc. no. 1, p. 25.) However, the Eleventh Amendment bars official capacity claims against state officials for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims against all Defendants for monetary relief fails as a matter of law.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 23rd day of January, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA